UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREAT LAKES INTERNATIONAL TRADING, INC., <br>     Plaintiff, <br><br> v. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br>     Defendant. | No. 3:13-cv-01522 (JAM) |

**RULING RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This case involves an insurance coverage dispute arising from flooding at a warehouse near a river in New Jersey. Because I conclude that the insurance policy contains a clear exclusion for flood damage of the type at issue in this case, I will grant summary judgment in favor of the insurance company defendant.

### BACKGROUND

In late October 2012, Hurricane Sandy struck the East Coast of the United States, visiting much of its wrath on coastal areas of New Jersey. One of Sandy's many victims was Building #8 of the Refrig-It Warehouse facility in South Kearny, New Jersey. Sandy damaged the warehouse in at least two ways. First, floodwaters from the nearby Hackensack River inundated the warehouse. Second, high winds sheared open parts of the warehouse's roof, allowing extensive rainwater to enter inside.

Plaintiff Great Lakes International Trading, Inc. imports food products such as seeds, dried fruits, and edible nuts for sale in the United States. When Hurricane Sandy damaged the New Jersey warehouse, it caused more than $1.5 million of damage to plaintiff's goods that were stored there.

Plaintiff had insurance coverage from defendant Travelers Property Casualty Company of America. One of the policies was a "Marine Open Cargo Policy" that covers ocean freight shipments of Great Lakes' goods. Doc. #35-5 at 2-15. Because the marine policy does not extend to risks associated with the storage of on-land goods in warehouses after their shipment, the parties agreed to a separate "Warehouse Coverage" endorsement. This endorsement includes up to $5 million of coverage for goods at the New Jersey warehouse. Doc. #35-4 at 3. Most important for this case, however, the endorsement provides that "the peril of Flood is excluded" from coverage for the New Jersey warehouse location. *Id.*

This lawsuit arises from the foregoing flood exclusion in the policy. Defendant has paid plaintiff nearly $900,000 for damages that defendant believes was caused by rainwater entering the warehouse through openings in its roof. But defendant has otherwise denied payment for losses of about $650,000 that it believes are attributable to damage from the river's floodwaters. The parties have cross-moved for summary judgment on the same legal issue: whether defendant is liable under the endorsement for damages stemming from the flood of the New Jersey warehouse.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Here, I need not determine whether genuine fact issues remain, because the parties have agreed that the sole basis for dispute in their cross motions for summary judgment concerns a purely legal interpretation of the parties' insurance contract.

This Court has diversity jurisdiction, and the parties agree that I should apply the law of New Jersey where the damage occurred. New Jersey applies familiar principles of insurance contract law. The terms of an insurance policy in New Jersey are to be given their plain and ordinary meaning, with ambiguity construed in favor of the insured. Moreover, an exclusion from coverage is to be strictly construed against the insurer, and the burden remains on the insurer to show that a policy exclusion applies. *See generally Mem'l Properties, LLC v. Zurich Am. Ins. Co.*, 210 N.J. 512, 525, 46 A.3d 525 (2012); *Flomerfelt v. Cardiello*, 202 N.J. 432, 441-43, 997 A.2d 991 (2010).

The Warehouse Coverage endorsement contains a clear exclusion for flooding at the New Jersey warehouse. The exclusion states as follows: "It is further understood and agreed that the peril of Flood is excluded for the following location" and then lists the name and address of the New Jersey warehouse. Doc. #35-4 at 3. That exclusion plainly extends to the type of inundation by means of rising waters from the Hackensack River that occurred in this case. "When a body of water overflows its normal boundaries and inundates an area of land that is normally dry, the event is a flood." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 214 (5th Cir. 2007) (footnote omitted); *see also Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) ("We have repeatedly held that the term 'flood' includes storm surges."); Wayne D. Taylor, Arthur J. Park & Sean O'Brien, *Unique Coverage Issues in Flood Losses*, 48 Tort Trial & Ins. Prac. L.J. 619, 631 (2013) ("[T]he majority of dictionaries, legal treatises, and courts agree that [the ordinary meaning of] 'flood' generally means the overflow of a body of water on a normally dry area, regardless of whether the water comes from a natural or man-made source.").

Rather than pointing to any ambiguity in the pertinent language of the flood exclusion (that "the peril of Flood is excluded" from coverage for the New Jersey warehouse location),

plaintiff relies on the fact that the flood exclusion is not located in a part of the Warehouse Coverage endorsement that lists other exclusions.[1] Instead, the exclusion is quite infelicitously tacked on at the very end of the endorsement without its own paragraph number or sub-heading and as if conjoined to a collection of several preceding paragraphs that appear under a sub-heading for "Earth Movement Sublimit & Deductible" and that refer to sublimits and deductibles for losses stemming from "earth movements" such as earthquakes. From this locational discrepancy (which might well have stemmed from a draftsperson's desire to cram the remaining endorsement text onto a single page), plaintiff contends that the flood exclusion applies only when an earthquake or other earth movements induce a flood.

I am not persuaded. Although the flood exclusion surely could more appropriately have been set off from other text or located elsewhere in the endorsement, its wording *inter se* as a flood exclusion is clear. Moreover, the preambular words to the exclusion—that "[i]t is *further* understood and agreed" (emphasis added)—make clear that the flood exclusion stands apart from the remainder of the preceding paragraphs referring to earth-movement related sublimits and deductions. Indeed, there is no common sense reason why an exclusion would or should be tethered to a sublimit or deduction; they deal with wholly different aspects of coverage. Nor is it plausible to conclude that the parties' interest with respect to protecting goods at a coastal New Jersey location was to limit liability only to earth-movement-induced floods as opposed to floods of any other (and far more likely) origin.

The most that can be said is that the flood exclusion was awkwardly set adrift within the Warehouse Coverage endorsement. An insurance company should know better. But the entire endorsement is only two pages, and there is no claim that its odd location amounted to

---

[1] Paragraph 4 of the Warehouse Coverage endorsement sets forth exclusions for causes such as conversion, mysterious disappearance, loss or damage from wear-and-tear, and loss resulting from delay.

concealment from a sophisticated business party insured. *See Amherst Country Club, Inc. v. Harleysville Worcester Ins. Co.*, 561 F. Supp. 2d 138, 148 (D.N.H. 2008) (reference to groundwater movement under heading for "earth movement" exclusion did not make exclusion ambiguous, because "[w]hatever general impression the title of the exclusion might cause, the language of the provision" was otherwise clear).

In short, the words of the flood exclusion admit of no earth-movement-induced limitation. Just as I cannot overlook the exclusion in its entirety, I cannot re-write the parties' contract to incorporate a limit on the exclusion as plaintiff proposes.

Noting that a flood itself may result from non-excluded reasons such as a hurricane or storm, plaintiff seems to contend that coverage may still exist under the efficient-proximate-cause or concurrent-causation doctrines.[2] "The concurrent causation doctrine allows for recovery where the loss essentially is caused by an insured peril with the contribution of an excluded peril merely as part of the chain of events leading to the loss," and "the efficient proximate cause doctrine allows coverage if an insured peril is the proximate cause of the loss, even if other contributing causes specifically are excluded from coverage." Taylor *et al.*, 48 Tort Trial & Ins. Prac. L.J. at 634-35; *see also Flomerfelt*, 202 N.J. at 447-48 (discussing concurrent causation doctrine); *Assurance Co. of Am., Inc. v. Jay-Mar, Inc.*, 38 F. Supp. 2d 349, 353-54 (D.N.J. 1999) (discussing concurrent-causation and efficient-proximate-cause doctrines).

Here, the exclusion plainly applies to a "flood" without limitation. Floods are not spontaneous and might always be ascribed to underlying causes. It would plainly defeat the purpose of a flood exclusion were a plaintiff permitted to circumvent it by means of attributing a

---

[2] Although plaintiff seemed to press this point at oral argument, plaintiff's briefing sought only to distinguish cases cited by defendant on grounds that—unlike the policy here—they involved policies with anti-concurrent cause language, and plaintiff stated that "[d]espite Travelers' focus on these cases, we do not reach this issue because the flood exclusion is ambiguous at best." Doc. #36 at 14-15.

classic flood of the kind at issue in this case to non-excluded sources. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d at 223 (rejecting reliance on efficient-proximate-cause and concurrent-causation doctrines because "here, on these pleadings, there are not two independent causes of the plaintiffs' damages at play; the only force that damaged the plaintiffs' properties was flood").

## CONCLUSION

For the foregoing reasons, I conclude that the flood exclusion for the New Jersey warehouse is not ambiguous and properly applies to damages arising from inundation in the warehouse due to rising of nearby river waters. Accordingly, defendant's motion for partial summary judgment (Doc. #35) is GRANTED, and plaintiff's cross-motion for summary judgment (Doc. #38) is DENIED.

It is so ordered.

Dated at Bridgeport this 26th day of November 2014.

/s/ Jeffrey Alker Meyer
Jeffrey Alker Meyer
United States District Judge